UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Biopolymer Engineering, Inc., d/b/a Biothera,
a Minnesota corporation, and Massachusetts
Institute of Technology,

       Plaintiffs,

v.                                                       Civ. No. 05-536 (JNE/SRN)
                                                                     ORDER

Immunocorp, a California corporation, and
Biotec Pharmacon ASA, a Norwegian corporation,

       Defendants.

Darren B. Schwiebert, Esq., and Kurt Niederluecke, Esq., Fredrikson & Byron, P.A., appeared for Plaintiff Biopolymer Engineering, Inc.

Katrina M. Quicker, Esq., Kilpatrick Stockton, LLP, and Edward M. Laine, Esq., Oppenheimer, Wolff & Donnelly, appeared for Defendants Immunocorp and Biotec Pharmacon ASA.

       This is an action by Biopolymer Engineering, Inc., d/b/a Biothera (Plaintiff) and the Massachusetts Institute of Technology against Immunocorp and Biotec Pharmacon ASA (Defendant) for patent infringement, defamation, and unfair competition.  The patents in suit include U.S. Patent No. 5,576,015 ('015 Patent) and U.S. Patent No. 5,702,719 ('719 Patent).  Two motions are before the Court:  (1) Defendant's motion to dismiss or, in the alternative, to stay the infringement claims that are based on the '015 Patent and the '719 Patent; and (2) Plaintiff's motion for summary judgment on the issue of ownership of the '015 Patent and the '719 Patent.  For the reasons set forth below, the Court denies both motions.

I.  DISCUSSION

A.  **Defendant's motion**

Defendant moves to dismiss the claims that it infringed the '015 Patent and the '719 Patent pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *see Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Where, as here, a defendant makes a factual challenge, a district court may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990); *cf. Faibisch*, 304 F.3d at 801 (rejecting contention that factual challenges arise only when court considers matters outside pleadings). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730. The plaintiff bears the burden of proving that jurisdiction exists. *Id.*

Defendant asserts that Immudyne, Inc., owns the '015 Patent and the '719 Patent. Because Plaintiff does not own the patents, Defendant argues, Plaintiff lacks standing to sue for infringement of the patents. Under 35 U.S.C. § 281 (2000), a "patentee" is entitled to bring an action for patent infringement. "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). Accordingly, "a suit for infringement of patent rights ordinarily [must] be brought by a party holding legal title to the patent." *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). Where a party does not hold legal title to the patent, the party nevertheless might have standing to sue in its own name: "[T]he patentee may effect a transfer of ownership for

standing purposes if it conveys all substantial rights in the patent to the transferee. In that event, the transferee is treated as the patentee and has standing to sue in its own name." *Id.* A party that is neither the patent's legal owner nor the transferee of all substantial rights in the patent has standing to sue for patent infringement if the party has a legally protected interest in the patent created by the Patent Act. *Id.* at 1193. "An exclusive licensee is considered to have such an interest. . . . [A]n exclusive licensee ordinarily may not sue in its own name alone, but must join the patent owner in an action brought against an accused infringer." *Id.* In contrast, a "nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *see Propat Int'l*, 473 F.3d at 1193-94.

The '015 Patent and the '719 Patent issued to Byron Donzis on November 19, 1996, and December 30, 1997, respectively. Before he received these patents, Donzis had licensed another patent, United States Patent No. 5,223,491 ('491 Patent), to Immudyne, Inc., through a series of licenses.[1] In October 1996, litigation involving Donzis, Immudyne, and others commenced in Texas state court. In October 1998, the Texas state court adopted a settlement agreement (*McLaughlin* settlement agreement). *See Donzis v. McLaughlin*, 981 S.W.2d 58, 65 (Tex. App. 1998) (reversing and remanding Texas district court's 1997 order because it added terms beyond scope of settlement agreement). The *McLaughlin* settlement agreement included representations that Immudyne is "the sole and exclusive licensee" of improvements on patents currently

---

[1] In December 1994, Donzis licensed the '491 Patent to Donzis Research Laboratories, Inc. In turn, Donzis Research Laboratories licensed the patent to Carmel Research, Inc. Finally, Carmel Research granted a license to Immudyne.

3

licensed to it.[2] Defendant asserts that the *McLaughlin* settlement agreement granted Immudyne an exclusive license tantamount to an assignment of the '015 Patent and the '719 Patent. For present purposes, the Court assumes without deciding that the '015 Patent and the '719 Patent

---

[2]  In its license to Immudyne, Carmel Research agreed to disclose to Immudyne "any improvements made" to the invention claimed in the '491 Patent and to allow Immudyne "to make, use and sell said improvement." *See McLaughlin*, 981 S.W.2d at 64. Improvements by Immudyne become Donzis's "exclusive property," subject to a nonexclusive license in favor of Immudyne, to the extent Carmel Research is entitled to grant such a license. *Id.* The *McLaughlin* settlement agreement provides in part:

B. PATENT TECHNOLOGY

1. Donzis and any Donzis owned or controlled entities, reaffirm that, as set forth in the license agreements between Donzis, Donzis Research, Inc. and Donzis Laboratories, Inc. and Carmel, Carmel is the sole and exclusive licensee worldwide for all patents currently licensed by said entities to Carmel, and shall be the sole and exclusive licensee for such patents and related technology and improvements on such patents and related technology.

2. Carmel reaffirms that, as set forth in the license agreements between Carmel and Immudyne, Immudyne is the sole and exclusive licensee worldwide for all patents currently licensed to Immudyne, and shall be the sole and exclusive licensee for such patents and related technology and improvements on such patents and related technology.

3. Donzis warrants and represents that, to the extent that Donzis owns any right, title or interest in the license agreement between Carmel and Immudyne, that Immudyne is the sole and exclusive licensee of all patents and related technology currently licensed to Immudyne. Donzis further warrants and represents that, to the extent that Donzis owns any right, title or interest in the license agreement between Carmel and Immudyne, Immudyne shall be the sole and exclusive licensee of all improvements on patents currently licensed to Immudyne, and all related technology.

4. Carmel warrants and represents that, to the extent that Carmel owns any right, title or interest in the license agreement between Donzis, Donzis Research, Inc., Donzis Laboratories, Inc. and Carmel, that Carmel is the sole and exclusive licensee of all patents and related technology currently licensed to Carmel. Carmel further warrants and represents that, to the extent that Carmel owns any right, title or interest in the license agreement between Donzis, Donzis Research, Inc., Donzis Laboratories, Inc. and Carmel, Carmel shall be the sole and exclusive licensee of all improvements on patents currently licensed to Carmel, and all related technology.

are "improvements" to the '491 Patent, that the *McLaughlin* settlement agreement granted exclusive licenses in the '015 Patent and the '719 Patent to Immudyne, and that the exclusive licenses conveyed all substantial rights in the '015 Patent and the '719 Patent to Immudyne. Immudyne did not record the licenses.

On September 30, 1999, Donzis and Plaintiff entered into a license agreement that included the '015 Patent and the '719 Patent. A few months later, Plaintiff recorded the license. "To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, [a court] must ascertain the intention of the parties and examine the substance of what was granted." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006); *see Propat Int'l*, 473 F.3d at 1189. Under the agreement, Donzis grants to Plaintiff "an exclusive license to make, have made, import, use, offer for sale and sell the Licensed Products utilizing the inventions claimed in any of the Patents throughout the United States" and the right to "sub-license the Patents to third parties." Plaintiff agrees to pay a license fee of $100,000 to Donzis and a royalty of 10% of net sales of licensed products that it sells. Plaintiff also agrees to pay Donzis 50% of sublicense fees. Plaintiff and Donzis agree to notify the other upon learning of any potential claim for infringement. Plaintiff has "the exclusive right to bring suit through counsel of [its] selection and to join [Donzis] as a party if necessary or advisable." If Plaintiff fails to bring an action within sixty days of learning of an act of infringement, Donzis retains the right to bring suit. The party bringing suit controls the litigation, bears the costs of litigation, and retains all monies recovered. Donzis, however, retains the right to approve termination of litigation other than by judgment of a court that adversely affects the validity or scope of a patent. In addition, monetary recovery by Plaintiff is subject to the agreement's royalty terms. Donzis agrees to pay all fees to maintain the licensed

patents; Plaintiff's payment of the fees reduces payments due to Donzis accordingly. Plaintiff agrees to obtain liability insurance and to indemnify Donzis against damages resulting from the design, manufacture, or use of the licensed products. Finally, with the exception of a transfer to a subsidiary, the agreement restricts Plaintiff's ability to assign the agreement: "[Plaintiff] may not assign or transfer this Agreement without the consent of [Donzis], which consent will not be unreasonably withheld . . . ."

The Court's review of the agreement reveals that Donzis retained ownership of the '015 Patent and the '719 Patent but transferred all substantial rights in them to Plaintiff. As evidence of Donzis's ownership interest, the agreement states that Donzis owns the patents, that Donzis shall pay fees to maintain them, and that Plaintiff shall obtain insurance and indemnify Donzis. *See Propat Int'l*, 473 F.3d at 1191 ("The responsibility to maintain a patent is one of the obligations that has been recognized by this court as an indication that the party with that obligation has retained an ownership interest in the patent."). In addition, Donzis retains an economic interest in the patent. *See id.* However, "the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent . . . does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent." *Id.*

Under the agreement, Plaintiff has the exclusive right to make, use, and sell products covered by the '015 Patent and the '719 Patent. Plaintiff's right to sue and its ability to sublicense give Plaintiff effective control over the patents' enforcement. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000). These rights strongly favor a finding that Plaintiff obtained all substantial rights in the '015 Patent and the '719 Patent. *See Aspex Eyewear*, 434 F.3d at 1342. Plaintiff's inability to transfer the agreement unless Donzis consents, such consent not to be unreasonably withheld, is not sufficiently restrictive to require a

different conclusion. *See Speedplay, Inc.*, 211 F.3d at 1251-52. In short, the Court finds that Donzis granted to Plaintiff all substantial rights in the '015 Patent and the '719 Patent.

Plaintiff contends that its license rendered Immudyne's earlier license void:

> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

35 U.S.C. § 261 (2000); *see Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1334 (Fed. Cir. 2002). Here, Immudyne did not record its license. Plaintiff later recorded its license without notice of Immudyne's license, and Plaintiff paid valuable consideration for the license. Thus, the license obtained by Plaintiff in September 1999 rendered Immudyne's earlier license void.

In 1999, Immudyne sued Donzis in Texas state court for breach of the *McLaughlin* settlement agreement. A few months after Plaintiff recorded its license from Donzis, the Texas state court granted Immudyne's motion for summary judgment, concluding that Donzis had breached the *McLaughlin* settlement agreement. Three months later, on June 8, 2000, Donzis assigned the '015 Patent and the '719 Patent to PSA Incorporated. Fifteen days later, the Texas state court ordered Donzis to pay Immudyne $600,000 as damages for his breach of the *McLaughlin* settlement agreement. PSA recorded the assignments from Donzis on July 6, 2000.

Approximately seventeen months later, on December 5, 2001, Plaintiff and PSA entered into an Asset Purchase Agreement. The assets bought by Plaintiff included the '015 Patent and the '719 Patent. Plaintiff recorded the assignments in June 2002.

On December 27, 2001, the Texas state court ordered Donzis "to assign his legal ownership interest" in several patents, including the '015 Patent and the '719 Patent, to Immudyne by December 31, 2001, to satisfy the $600,000 judgment against him. If Donzis

7

failed to do so, the Texas state court authorized a trustee to assign the patents to Immudyne. On February 15, 2002, the trustee assigned the patents to Immudyne.[3] On April 11, 2002, the trustee's assignments of the patents to Immudyne were recorded.

The trustee's assignments of the '015 Patent and the '719 Patent to Immudyne do not render Immudyne the owner of the patents. Donzis had assigned the patents to PSA, and PSA had recorded the assignments, before the Texas state court ordered him to assign "his legal interest" in the patents to Immudyne. Defendant contends that the assignment of the patents to PSA was illusory in that Donzis essentially transferred the patents to himself, but the assignments were not set aside before the Texas state court ordered Donzis to assign his legal interest to Immudyne. Accordingly, Donzis did not have legal title to the patents when he was ordered to assign the patents to Immudyne, and the trustee's assignment did not convey legal title to the patents to Immudyne. *See FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572-73 (Fed. Cir. 1991).

In short, Plaintiff has been the "patentee" of the '015 Patent and the '791 Patent since September 1999. Plaintiff therefore has standing the assert infringement claims based on the patents. Having decided that Plaintiff has standing to assert infringement claims based on the '015 Patent and the '791 Patent, the Court concludes that a stay of the claims is not warranted. Accordingly, the Court denies Defendant's motion.

---

[3] The trustee's assignments of the '015 Patent and the '719 Patent provide in part:

> I, the Patent Trustee, by these presents do sell, assign and transfer unto said Assignee [Immudyne] the entire right, title and interest in and to the said Patent aforesaid; the same to be held and enjoyed by the said Assignee for its own use and behalf, and for its legal representatives and assigns, to the full end of the term for which said Patent is granted, as fully and entirely as the same would have been held by Byron Donzis had this assignment not been made.

8

**B.      Plaintiff's motion**

Plaintiff moves for summary judgment on the issue of whether it owns the '015 Patent and the '791 Patent. Because Plaintiff is not seeking judgment on any of its claims, the Court denies the motion. *See Ott v. Target Corp.*, 153 F. Supp. 2d 1055, 1077 (D. Minn. 2001).

## II.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion to dismiss or, in the alternative, to stay [Docket No. 52] is DENIED.

2. Plaintiff's motion for partial summary judgment [Docket No. 64] is DENIED.

Dated: February 27, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
